UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**DARLENE HENDRICKSON**,                                   Case No. 3:10-cv-01508-KI

                    Plaintiff,                             OPINION AND ORDER

          v.

**CAROLYN W. COLVIN**, Acting
Commissioner of Social Security,

                    Defendant.

          Richard A. Sly
          209 S.W. Oak Street, Suite 102
          Portland, OR 97204

          Linda S. Ziskin
          PO Box 753833
          Las Vegas, NV 89136

                    Attorneys for Plaintiff

          S. Amanda Marshall
          United States Attorney
          District of Oregon

Page 1 - OPINION AND ORDER

Ronald K. Silver
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

Lisa Goldoftas
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

    Attorneys for Defendant

KING, Judge:

Plaintiff Darlene Marie Hendrickson brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI").  I affirm the decision of the Commissioner.

## BACKGROUND

Hendrickson filed applications for DIB and SSI on August 25, 2007, alleging onset of disability beginning August 7, 2006.  After her applications were denied, Hendrickson, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ"), who issued a decision on August 25, 2009 finding Hendrickson not disabled within the meaning of the Act.  The Appeals Council denied review and, upon appeal, I granted the Commissioner's request and  remanded the case to complete the record or conduct further administrative proceedings.

In the meantime, Hendrickson was awarded benefits on her subsequent application, thereby limiting the time frame on remand to the period from August 7, 2006 to August 26, 2009.

On remand, after a hearing, the ALJ issued a decision on March 29, 2012 finding Hendrickson not disabled within the meaning of the Act and therefore not entitled to benefits. This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The evaluation is

carried out by the ALJ. The claimant has the burden of proof on the first four steps. Parra v.
Astrue, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ
determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R.
§§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity, disability benefits are
denied. Otherwise, the ALJ proceeds to step two and determines whether the claimant has a
medically severe impairment or combination of impairments. A severe impairment is one
"which significantly limits [the claimant's] physical or mental ability to do basic work
activities[.]" 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe
impairment or combination of impairments, disability benefits are denied.

　　　　If the impairment is severe, the ALJ proceeds to the third step to determine whether the
impairment is equivalent to one of a number of listed impairments that the Commissioner
acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d)
and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is
conclusively presumed to be disabled. If the impairment is not one that is presumed to be
disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the
claimant from performing work which the claimant performed in the past. If the claimant is able
to perform work she performed in the past, a finding of "not disabled" is made and disability
benefits are denied. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

　　　　If the claimant is unable to perform work performed in the past, the ALJ proceeds to the
fifth and final step to determine if the claimant can perform other work in the national economy
in light of his age, education, and work experience. The burden shifts to the Commissioner to
show what gainful work activities are within the claimant's capabilities. Parra, 481 F.3d at 746.

Page 4 - OPINION AND ORDER

The claimant is entitled to disability benefits only if he is not able to perform other work. 20

C.F.R. §§ 404.1520(g) and 416.920(g).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial

evidence and is based on correct legal standards. Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir.

2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less

than a preponderance. Id. (internal quotation omitted). The court must uphold the ALJ's

findings if they "are supported by inferences reasonably drawn from the record[,]" even if the

evidence is susceptible to multiple rational interpretations. Id.

## THE ALJ'S DECISION

In his March 29, 2012 opinion, the ALJ identified Hendrickson's severe impairments as

follows: a bilateral hearing deficit, a depressive bipolar disorder, an anxiety disorder, a history of

methamphetamine abuse in reported substantial remission, and ongoing significant, chronic

alcohol abuse. The ALJ also found that these impairments, either singly or in combination, did

not meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404,

Subpart P, Appendix 1. Given these impairments, the ALJ opined Hendrickson could perform

medium work, but should avoid moderate exposure to noise, should avoid workplace hazards,

should have no public contact, should not work by telephone, could perform only entry level

work of one to three step tasks consistent with unskilled work level SVP 2, and would

occasionally experience marked attention and concentration deficits. Given this residual

functional capacity ("RFC"), Hendrickson could not perform her past relevant work or any other work in the national economy.

Having found Hendrickson disabled with her severe impairment of significant, chronic alcohol abuse, the ALJ then determined what RFC Hendrickson would have if she stopped abusing alcohol. He concluded her RFC would be almost the same, except she would no longer have a limitation in her ability to attend and concentrate. As a result, Hendrickson could perform her past, relevant work as a clothing sorter.

## FACTS

Hendrickson was 39 years old on her alleged disability onset date. She has at least a high school education.[1] She alleges disability due to anxiety disorder, panic disorder with agoraphobia, bipolar disorder, attention deficit hyperactivity disorder, hearing loss, and substance abuse problems.

## DISCUSSION

I.    Hendrickson's Credibility

While discussing Hendrickson's earnings history, for purposes of evaluating substantial gainful activity at step one of the analysis, the ALJ noted Hendrickson's receipt of unemployment benefits during the second half of 2009 and the first three quarters of 2010. Hendrickson argues the ALJ improperly concluded receipt of benefits "affirmed [Hendrickson] was physically able to work, actively seeking work, and willing to accept work," and suggests the ALJ's comment poisoned his later credibility analysis. Tr. 27.

---

[1]Although she told Robert A. Kruger, Psy.D., a clinical psychologist, that she attended school until the eighth grade (Tr. 1037), she testified she completed 15 years of school (Tr. 70) and in her disability report she indicated she completed three years of college. Tr. 257.

In Carmickle v. Commisioner, the court commented that receiving "unemployment benefits can undermine a claimant's alleged inability to work fulltime," but noted such a determination would not follow from a claimant holding herself out as available for only part-time work. 533 F.3d 1155, 1162 (9th Cir. 2008). Absent evidence in the record from which the ALJ could conclude Hendrickson was looking for full time work, her acceptance of unemployment benefits says nothing about her credibility.

Nevertheless, just as in Carmickle, the ALJ's error is harmless. As an initial matter, his comment about receipt of unemployment benefits arose in the context of evaluating substantial gainful activity and he did not mention it in his credibility analysis. Furthermore, he gave other clear and convincing reasons supported by substantial evidence in the record to question Hendrickson's testimony. See Carmickle, 533 F.3d at 1163 (consideration of receipt of unemployment benefits was harmless); see also Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004) (fact that ALJ improperly considered some reasons for finding plaintiff's credibility undermined does not mean entire credibility assessment is improper). For example, he pointed to Hendrickson's inconsistent reports that she was able to care for herself and her home, and walk a mile, while at the same time telling the Agency she was physically and mentally unable to work. Both lay witnesses described a competent, functional person, but her son described her alcohol abuse problem. Hendrickson reported to treating sources that she was in good health, with the exception of her hearing problem. Hendrickson does not challenge any of these reasons supporting the ALJ's credibility determination.

In short, any error in referencing Hendrickson's receipt of unemployment benefits at step one was harmless.

Page 7 - OPINION AND ORDER

II.    <u>Non-Medical Source</u>

The ALJ discussed a letter from Kathryn E. Eckert-Mason, a vocational rehabilitation counselor, who opined Hendrickson's disability impeded her employability. The ALJ noted Eckert-Mason is a counselor, and not a "well-qualified source," and that she failed to identify the disabilities limiting Hendrickson. Tr. 31.

Eckert-Mason is considered among the "other sources" listed in the Social Security regulations. <u>See</u> 20 C.F.R. § 404.1513(d)(1), 416.913(d)(1). The ALJ may reject the opinions of such sources by giving reasons that are "germane" to that source. <u>Dodrill v. Shalala</u>, 12 F.3d 915, 919 (9th Cir. 1993). A relevant factor in determining the persuasiveness of an "other source" opinion includes how well the source explains the opinion. SSR 06-03p, 2006 WL 2329939, at *3 (Aug. 9, 2006). As the ALJ pointed out, Eckert-Mason gave no detail about what impairments or limitations kept Hendrickson from working. Hendrickson suggests the opinion was sufficiently incomplete that the ALJ should have contacted Eckert-Mason for an explanation. The ALJ must supplement the record if: (1) there is ambiguous evidence; (2) the ALJ finds that the record is inadequate; or (3) the ALJ relies on an expert's conclusion that the evidence is ambiguous. <u>Webb v. Barnhart</u>, 433 F.3d 683, 687 (9th Cir. 2005). Here, the record was fully adequate to properly evaluate Hendrickson's conditions and limitations. As a result, the ALJ did not err.

III.    <u>Drug and Alcohol Analysis</u>

The crux of Hendrickson's appeal is that the ALJ did not properly conduct the drug and alcohol analysis.

> Under 42 U.S.C. § 423(d)(2)(C), a claimant cannot receive disability benefits "if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." . . . Under the implementing regulations, the ALJ must conduct a drug abuse and alcoholism analysis ("DAA Analysis") by determining which of the claimant's disabling limitations would remain if the claimant stopped using drugs or alcohol. 20 C.F.R. § 404.1535(b).  If the remaining limitations would still be disabling, then the claimant's drug addiction or alcoholism is not a contributing factor material to his disability.  If the remaining limitations would not be disabling, then the claimant's substance abuse is material and benefits must be denied.

Parra v. Astrue, 481 F.3d 742, 746-47 (9th Cir. 2007).  The drug and alcohol analysis is only performed "[i]f we find that you are disabled."  20 C.F.R. §§ 404.1535(a), 416.935(a); Bustamante v. Massanari, 262 F.3d 949, 955 (9th Cir. 2001) (ALJ must identify disability under the five-step procedure before conducting a drug and alcohol abuse analysis to determine if substance abuse was material to disability).  The claimant has the burden of proving that drug or alcohol addiction is not a contributing factor material to his disability.  Parra, 481 F.3d at 748.

The ALJ concluded Hendrickson was disabled when he included limitations associated with her alcohol addiction.  He then examined whether Hendrickson would remain limited to the same degree if she stopped abusing alcohol.  He concluded Hendrickson would no longer suffer attention and concentration deficits that were marked in severity.  The ALJ described the opinion of Robert Kruger, Psy.D., who suggested Hendrickson's alcohol use affects her mental health.  Dr. Kruger listed alcohol dependence as the leading diagnosis.  The ALJ also relied on Dr. Kruger's opinion that Hendrickson was

> cooperative, pleasant, mild mannered, intellectually functioning in average range, having fair memory capabilities responding appropriately to the examiner's questions and tasks.  It is the opinion of this examiner that she has the cognitive capability and understanding to complete simple to medium complex tasks; however, persistence in completing those tasks would be impaired as a consequence of her continued alcohol use.

Tr. 1041 (referred to by ALJ at Tr. 32).  The ALJ  pointed to the lay witness statements, both of whom described Hendrickson as being independent, able to get around, and social; her son described Hendrickson's alcohol abuse as being the reason for missing work, not doing anything, and being antisocial.  Medical reports reflect Hendrickson's involuntary hospitalizations due to alcohol abuse, court-ordered drug and alcohol treatment, and minor injuries mostly as a result of intoxication.

Hendrickson appears to agree that it is her burden to show her other severe impairments are disabling on their own (i.e. without her alcohol abuse) and would not improve were she to stop abusing alcohol.  However, she contends there must be some evidence in the record of a significant period of sobriety in order to determine whether her functioning would improve and there is no such evidence.  As a result, Hendrickson argues, relying on a Social Security Ruling entitled "Titles II and XVI:  Evaluating Cases Involving Drug Addiction and Alcoholism (DAA)," it is the ALJ "who must show that there is a period of abstinence to allow for a baseline comparison."  Pl.'s Opening Br. 6 (citing SSR 13-2p, 2013 WL 621536 (effective March 22, 2013)).  Hendrickson contends the case must be remanded for development of the record on her ability to function without alcohol.

SSR 13-2p "consolidate[s] information from a variety of sources to explain our DAA policy."  2013 WL 621536, at *2.[2]  The policy was issued after the ALJ's decision, although it became effective just before the Appeals Council reviewed Hendrickson's claim.  Assuming

---

[2]Social Security Rulings are issued to clarify the Regulations and policy.  They are not published in the federal register and do not have the force of law.  However, under the case law, deference is to be given to the Commissioner's interpretation of the Regulations.  Ukolov v. Barnhart, 420 F.3d 1002, 1005 n.2 (9th Cir. 2005).

without deciding that the policy is applicable, since it was in place at the time the Appeals

Council reviewed Hendrickson's claim, and since it merely consolidates existing information

about the DAA policy, I will assess whether the ALJ's decision complies with SSR 13-2p.

As an initial matter, SSR 13-2p underscores what the cases hold–the burden continues to

lie with Hendrickson to prove disability.  Id. at *4.

The ALJ's task is to

project the severity of the claimant's other impairment(s) in the absence of DAA.
We make this finding based on the evidence in the claimant's case record.  In
some cases, we may also consider medical judgments about the likely remaining
medical findings and functional limitations the claimant would have in the
absence of DAA.

Id. at *7.  DAA is material if the claimant's "other impairment(s) would improve to the point that

the claimant would not be disabled in the absence of DAA.  On these findings, we deny the

claim."  Id. at *8.

The policy explains that evidence from a period of abstinence is the "best evidence" for

determining whether a physical impairment would improve.  Id.  But Hendrickson's argument is

absurd that without a period of abstinence the ALJ cannot find her DAA material.  "An alcoholic

claimant who presents inconclusive evidence of materiality has no incentive to stop drinking,

because abstinence may resolve his disabling limitations and cause his claim to be rejected or his

benefits terminated."  Parra, 481 F.3d at 750.

Hendrickson had the burden of proving her alcohol abuse was not a contributing material

factor to her disability and she failed to meet that burden.  In fact, the evidence the ALJ

enumerated was to the contrary.  The ALJ did not err.

IV.    <u>Past Relevant Work</u>

Finally, Hendrickson argues the ALJ erred in counting her sorting job as past relevant work.  Past relevant work is work performed within the last 15 years, which was substantial gainful activity and lasted long enough to learn to do it.  20 C.F.R. §§ 404.1565(a), 416.965(a).  The Commissioner does not "usually consider" work done more than 15 years "before the time we are deciding whether you are disabled (or when the disability insured status requirement was last met, if earlier) applies."  <u>Id.</u>

Hendrickson testified that she performed the sorting job for 30 hours a week for three or four months.  When she completed her Disability Report, she listed the job as past work, five hours per day, six days a week, earning $6 per hour.  She earned a total of $1,560.63.  As a result, the Commissioner properly calculates that plaintiff worked 260 hours over the course of 8.66 weeks.  As a result, Hendrickson earned more than the SGA threshold in 1997 of $500 per month.  <u>See</u> http://www.ssa.gov/OACT/cola/sga.html.  Part-time work may qualify as SGA.  20 C.F.R. § 404.1572(a).

Hendrickson urges that there is insufficient evidence in the record to support a finding that she performed the work in the last 15 years.  Although the Commissioner "usually" does not consider work done more than 15 years before the decision, unless Hendrickson performed the sorting job in January and February 1997 she performed the job within the last 15 years of the ALJ's decision.  I will not disturb the ALJ's decision, particularly when the relevant period at issue is August 7, 2006 through August 25, 2009.  <u>See</u> <u>Batson v. Comm'r, Soc. Sec. Admin.</u>, 359 F.3d 1190, 1193 (9th Cir.2004) (holding Agency's findings must be affirmed if supported by "inferences reasonably drawn from the record, and if evidence exists to support more than one

rational interpretation") (citation omitted); <u>Macri v. Chater</u>, 93 F.3d 540, 544 (9th Cir.1996)

(holding "ALJ is entitled to draw inferences logically flowing from the evidence") (citation

omitted).[3]

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and

the correct legal standards.  For these reasons, the court affirms the decision of the

Commissioner.

IT IS SO ORDERED.

DATED this ____13th____ day of August, 2014.


 /s/ Garr M. King
Garr M. King
United States District Judge

_____

[3]Hendrickson's attorney stipulated at the prior hearing on April 10, 2009 that the sorting job qualified as past relevant work.  Tr. 88.  The ALJ referenced the previous hearing in questioning the Vocational Expert.  Hendrickson's attorney did not raise the age of the sorting job.